UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ALEXANDER JOSE VIZCAINO MARRUFO,

           ˙ Petitioner,

        v.

PHILIP RHONEY, *in his official capacity
as Acting Field Office Director, Buffalo
Field Office, Enforcement and Removal
Operations, U.S. Immigration & Customs
Enforcement; et al.,*
            Respondents.

6:26-CV-06479-MAV

**ORDER**

---

Petitioner Alexander Jose Vizcaino Marrufo ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility in Batavia, New York, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. The Court issued an Order on May 19, 2026, finding that the statutory basis for Petitioner's detention is 8 U.S.C. § 1226(a), and because his detention had become unreasonably prolonged, that Petitioner was entitled to a bond hearing during which the government was "required to show by clear and convincing evidence" that Petitioner was either a flight risk or a danger to the community. ECF No. 10. The Court also ordered that the immigration judge "consider Petitioner's ability to pay and alternative means of assuring appearance." *Id.*

The bond hearing took place on May 27, 2026, and Immigration Judge Thanos Kanellakos (the "IJ") issued an order denying Petitioner's release, finding that the government established by clear and convincing evidence that Petitioner is a flight

risk. ECF No. 11. Petitioner filed a letter contending that the bond hearing did not comply with the Court's order. ECF No. 11. The Court construed the letter as a motion to enforce the Court's prior order and set a briefing schedule. ECF No. 12. Respondents submitted papers in opposition, ECF No. 18, as well as a digital audio recording of the bond hearing to the undersigned's chambers. Petitioner filed a reply. ECF No. 19. For the reasons set forth in this Order, the Court finds that Petitioner has failed to demonstrate that the bond hearing did not comply with the Court's order.

## DISCUSSION

Petitioner contends that the IJ placed improper weight on the fact that he was subject to a nonfinal order of removal and that his appeal to the Board of Immigration Appeals ("BIA") was unlikely to succeed. ECF No. 11. Petitioner also contends that the IJ did not meaningfully consider alternatives to detention or his ability to pay. *Id.* Petitioner highlights a "[c]ontinued [m]edical [d]ecline" relating to a tooth infection. *Id.*

In response, Respondents argue that Petitioner's motion should be denied because he failed to exhaust administrative remedies, 8 U.S.C. § 1226(e) insulates the IJ's decision from federal judicial review, and Petitioner received a bond hearing in accordance with this Court's order. ECF No. 18.

## I. Respondents' Arguments Regarding Exhaustion and Jurisdiction

With respect to Respondent's argument that the pending motion must be denied because Petitioner did not pursue an appeal of the IJ's bond determination to the BIA as authorized by 8 C.F.R. § 1003.1(b), the Court disagrees. "Administrative

exhaustion is not required when this Court is deciding only whether the petitioner received the relief that the Court already ordered." *Tucker v. Searls*, No. 22-CV-608-LJV, 2023 WL 3267085, at *2 (W.D.N.Y. May 5, 2023).

Similarly, the Court rejects Respondents' argument that 8 U.S.C. § 1226(e) deprives the Court of jurisdiction to resolve the pending motion. Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." In the instant case, however, the Court is neither reviewing the IJ's "discretionary judgment" under § 1226 nor "set[ting] aside any action or decision by the Attorney General." Rather, "the Court is determining whether all of the conditions contained in the bond order were followed . . . ." *Mathon v. Searls*, 623 F. Supp. 3d 203, 213 (W.D.N.Y. 2022). "[A] federal court always retains jurisdiction to enforce its lawful judgments, including habeas judgments, and . . . . has the authority to see that its judgment is fully effectuated." *Davis v. Garland*, 708 F. Supp. 3d 283, 291 (W.D.N.Y. 2023) (citing *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 235 (W.D.N.Y. 2019)).

## II. The Merits of Petitioner's Motion

Turning, then, to the merits of Petitioner's pending motion, "'it is important to emphasize that the Court's task is narrow: it is to determine whether Respondent complied with the [Court's order], not to review the hearing evidence *de novo*[.]'" *Blandon v. Barr*, 434 F. Supp. 3d 30, 38 (W.D.N.Y. 2020) (collecting cases, quoting

*Apollinaire v. Barr*, No. 19-CV-6285-FPG, 2019 WL 4023560, at *2 (W.D.N.Y. Aug. 27, 2019)). Bearing that in mind, the Court has carefully considered the record of the bond hearing before the IJ – including the audio recording of the proceeding ("AR")[1] – and concludes that the IJ complied with the Court's order: he neither applied the wrong standard nor relied upon evidence that was insufficient as a matter of law. *See Tucker*, 2023 WL 3267085, at *5 (quoting *Hechavarria*, 358 F. Supp. 3d at 240 for the proposition that there are two ways to challenge whether the adjudicator applied the correct standard of proof: (1) that the evidence itself could not, as a matter of law, have supported the adjudicator's conclusion, and (2) that the adjudicator did not apply the correct standard to the facts).

The immigration judge has broad discretion to consider a number of factors to determine whether the detainee merits release on bond. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). These factors include any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from

---

[1] Respondents provided the Court and Petitioner with an audio recording of the hearing, and Petitioner's counsel has admitted to the correctness of the audio recording. *See* ECF No. 19 at 2. The Court will reference that recording as "AR" in citations throughout the remainder of the Order.

authorities; and (9) the alien's manner of entry to the United States. *Id.* In addition, the immigration judge may consider the alien's potential eligibility for relief from removal as a reflection on the risk of flight. *See, e.g., Matter of Dobrotvorskii*, 29 I. & N. Dec. 211, 215 (BIA 2025) (finding the possibility of relief from removal to be "speculative," and citing *Matter of Andrade*, 19 I. & N. Dec. 488, 491 (BIA 1987)).

Here, at Petitioner's bond hearing, the IJ applied the correct legal standard and considered proper factors in denying bond based on Petitioner's risk of flight. The IJ recognized that pursuant to an order from this Court, the government bore the burden to prove by clear and convincing evidence that Petitioner was either a danger to the community or a flight risk. *See* ECF No. 11-1 at 1; AR at 07:27–07:46. In finding that the government satisfied that burden, the IJ properly considered the existence of an order of removal against Petitioner and the likelihood of relief from that order on appeal. *See* AR at 8:08–11:11 *See, e.g., Bertrand v. Sava*, 684 F.2d 204, 217 n.16 (2d Cir. 1982) ("an alien likely to achieve the goal of lawful entry into the United States is less likely to abscond than one whose prospects are more doubtful"); *see also Matter of R-A-V-P*, 27 I. & N. Dec. 803, 805 (BIA 2020). The IJ saw "some weaknesses" with Petitioner's appeal and apportioned "significant weight" to that factor because if unsuccessful, Petitioner would be subject to a final order of removal and therefore creating an incentive to abscond. AR at 08:08–11:00. Additionally, the IJ stated that Petitioner's "irregular[ ]" manner of entry into the country weighed against release on bond. AR at 07:58–08:06. The IJ found that Petitioner's unlawful manner of entry and likelihood of success on appeal outweighed other factors that favored release on

bond, such as Petitioner's history of appearing for immigration hearings. AR at 10:22–11:00. Regardless of whether the Court would have weighed the evidence similarly under a *de novo* review, the Court's role in resolving this motion is limited as discussed above. Because the IJ applied the correct legal standard and relied on appropriate evidence in arriving at his decision, that Court cannot conclude that the IJ failed to comply with the Court's order.

Similarly, the Court finds that the IJ adequately "consider[ed] . . . alternative means of assuring appearance . . ." as required by this Court. While the IJ's assessment of alternatives could have been more thorough, there is no doubt that he considered them, explaining that alternatives to detention were inadequate to mitigate the risk of flight given the existence of an order of removal and the corresponding incentive to abscond. AR at 11:15–12:54. In light of the deferential standard of review, the Court finds that the IJ sufficiently complied with the Court's order. *See Davis*, 708 F. Supp. 3d at 299 ("And again, even if this Court may have reached a different conclusion regarding the possibility of suitable alternatives to detention, it is not this Court's role to engage in a re-weighing of the evidence considered by the IJ.") (internal citations and quotation marks omitted).

Lastly, the Court acknowledges Petitioner's claims of deteriorating health since his confinement began. Counsel for both parties appear to be working toward addressing his condition. ECF No. 11 at 3. The Court also observes that Petitioner did not raise his health concerns during the bond hearing. Nevertheless, Petitioner's medical condition is not relevant to the Court's limited function of assessing whether

Respondents complied with a court order directing them to provide a constitutionally adequate bond hearing. Accordingly, Petitioner's motion to enforce [ECF No. 11] is DENIED. Because the Court previously granted relief to Petitioner, ECF No. 10, the Clerk of Court is directed to enter judgment for Petitioner and close this case.

SO ORDERED.

Dated:      July 10, 2026
            Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge